**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

EMILEA BURGH,

     Plaintiff,

v.              CIVIL ACTION NO. 3:25-0490

CHUCK ZERKLE,
individually and as the Chief Deputy Sheriff of
Cabell County, West Virginia,
DOUG ADAMS,
individually and as the Elected Sheriff of
Cabell County, West Virginia,
CABELL COUNTY SHERIFF'S OFFICE,
a West Virginia political subdivision,
CABELL COUNTY COMMISSION,
a West Virginia political subdivision,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Partial Motion to Dismiss filed by Defendants Cabell County

Sheriff's Office (CCSO); Cabell County Commission (CCC); Chuck Zerkle, individually and as

the Chief Deputy Sheriff of Cabell County; and Doug Adams, individually and as the Elected

Sheriff of Cabell County. ECF No. 9. For the reasons stated below, the Court **GRANTS** the Motion

**in part** and **DENIES** the Motion **in part**.

### I.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This case involves alleged police misconduct arising at the scene of an arrest being carried

out in public by the Cabell County Sheriff's Deputies. Plaintiff Emilea Burgh alleges that

Defendant Zerkle and Defendant Adams witnessed and failed to intervene while an unnamed

deputy officer slammed the head of a handcuff-restrained individual into a patrol vehicle. *First*

*Am. Compl.* ¶¶ 18–24, 41, ECF No. 4. Plaintiff further alleges that, while positioned on a public sidewalk recording the incident, Defendant Zerkle attempted to get her to stop recording and leave the scene; made an unfounded threat to arrest her for obstruction; shook his handcuffs at her while asking "You wanna set of handcuffs?"; grabbed her by the arm and dragged her approximately fifteen feet; and subsequently approached her twice, denying his previous conduct and touching her again to demonstrate his perspective of his previous conduct. *Id.* ¶¶ 2, 20–25, 28, 31–38, 42. Plaintiff alleges that Defendant Adams witnessed the incident without intervening. *Id.* ¶¶ 3, 40–41.

Plaintiff filed the initial complaint in this action in August of 2025. *Compl.*, ECF No. 1. Plaintiff alleges Defendants violated her rights under state law, federal law, and the U.S. Constitution. *Id.* ¶ 6; *First Am. Compl.* ¶ 6. Plaintiff's First Amended Complaint was filed on November 3, 2025, containing the following claims: Count I, 42 U.S.C. § 1983 – Excessive Force Against Zerkle for the First Grab of Ms. Burgh; Count II, 42 U.S.C. § 1983 – Excessive Force Against Zerkle for the Second Grab; Count III, 42 U.S.C. § 1983 – First Amendment Retaliation Against Zerkle; Count IV, 42 U.S.C. § 1983 – Unlawful Seizure and/or Detention by Zerkle; Count V, 42 U.S.C. § 1983 – Failure to Intervene by Adams; Count VI, 42 U.S.C. § 1983 – *Monell* Liability for Failure to Hire, Train, and Supervise, and for Customs, Policies, and Practices Causing Violations of the Fourteenth Amendment; Count VIII, State Law  Battery; Count VIII, State Law Assault; Count IX, State Law Negligent Training/Supervision; and Count X, State Law Intentional and/or Negligent Infliction of Emotional Distress. *See First Am. Compl.* ¶¶ 6, 9, 12, 15, 17, 19, 22, 23, 25, 26. Defendants now move to dismiss "Plaintiff's certain claims against them with prejudice and any and all other relief as this Court finds just and proper." *Mot. to Dismiss* 1.[1]

---

[1] Defendants do not clearly identify all of the claims that the Partial Motion to Dismiss addresses.

## II.    STANDARD OF REVIEW

Defendants argue the claims against them should be dismissed pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. However, the motion was filed contemporaneously with their Answer. Therefore, the motion technically should have been filed as one for judgment on the pleadings pursuant to Rule 12(c). Fed. R. Civ. P. 12(h)(2); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Walker v. Kelley,* 589 F.3d 127, 139 (4th Cir. 2009). The distinction is without a difference, as the same standard of review applies. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

To survive a 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* at 545. While the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted) (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)). This Court should grant a Rule 12(c) motion only if, "'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (quoting *Edwards*, 178 F.3d at 244). It is under these standards the Court considers Defendants' arguments.

---

The Court proceeds despite this lack of compliance with LR Civ P 7.1(a)(1) ("All motions shall be concise, state the relief requested precisely, and be filed timely but not prematurely.").

## III.    DISCUSSION

### A.  Claims Against CCSO

Defendants move to dismiss Defendant CCSO, arguing that CCSO is not capable of being sued under West Virginia law, and is, therefore, an improper party. *Defs.' Mem. of L. in Supp. of Partial Mot. to Dismiss ("Defs.' Mem. of L. in Supp.")* 3–4, ECF No. 10. Plaintiff responds that sheriffs, sheriff's departments, and county commissions are distinct legal entities with independent authority and functions, each capable of being sued. *Pl.'s Resp. in Opp. to Defs.' Partial Mot. to Dismiss ("Pl.'s Resp.")* 5–6, ECF No. 13.

A local governing body "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). A government entity's capacity to be sued in federal court is determined by the state law in which the federal court sits. *Avery v. Burke Cnty.,* 660 F.2d 111, 113–14 (4th Cir. 1981) (citing Fed. R. Civ. P. 17 (b)(3). Defendants correctly assert that West Virginia law authorizes suits against the CCC but does not provide the same for CCSO. *See* W. Va. Code § 7-1-1(a) ("The county commission . . . of every county within the State of West Virginia shall be a corporation . . . by which name it may sue and be sued, plead and be impleaded and contract and be contracted with.").

Plaintiff's contention that CCSO is a political subdivision does not necessarily establish the ability to be sued. *Pl.'s Resp.* 2, 6. Plaintiff cites *Helms v. Carpenter* and *Maston v. Wagner* for the proposition that the sheriff's office is capable of being sued, but Plaintiff admits this Court has previously explained that the issue was not addressed in those cases and that state law does not give sheriff's offices the capacity to be sued. *See id.* (*citing Helms*, No. 16-1070, 2017 WL 5513618, at *6 (W. Va. Nov. 17, 2017) (unpublished); *Maston*, 781 S.E.2d 936, 955

(W. Va. 2015))*; see also Van v. Ferguson*, No. 3:25-0187, 2025 WL 2831182, at *2 (S.D. W. Va. Oct. 6, 2025); *Slone v. Racer*, No. 3:23-0636, 2025 WL 4314898, at *3 (S.D. W. Va. Sept. 26, 2024); *see also Eagon v. Cabell County Emergency Medical Services*, No. 3:23-0013, 2023 WL 8853727, at *3 (S.D. W. Va. Dec. 21, 2023). The Court agrees with the Defendants' argument that, given the existence of a state statute authorizing CCC to be sued and the lack of the same for CCSO, certification of the issue to the West Virginia Supreme Court of Appeals, as requested by Plaintiff, is unwarranted. *Defs.' Reply* 3, ECF No. 14 (citing W. Va. Code § 51-1A-3 (1976); *Pl.'s Resp.* 2 n.1).

Accordingly, the Court will dismiss CCSO as a party.[2]

### B. Excessive Force Claims under the First, Fourth, Fifth, and Fourteenth Amendment

In Counts I and II, Plaintiff asserts Defendant Zerkle violated 42 U.S.C. § 1983 by using excessive force in violation of her First, Fourth, Fifth, and Fourteenth Amendment rights. *First Am. Compl.* ¶¶ 47, 49, 53, 63, 65, 69. Plaintiff alleges Defendant Zerkle's conduct was excessive when he struck her with his hand while swiping at her phone, grabbed her, and dragged her some distance. *First Am. Compl.* ¶¶ 26, 32, 49, 64; *Pl.'s Resp.* 8.

Defendants argue that Plaintiff's Fourth Amendment claim of excessive force under 42 U.S.C. § 1983 fails due to insufficient pleading by failure to allege "constitutionally excessive force." *Defs.' Mem. of L. in Supp.* 4, 7. Additionally, Defendants argue the claims asserting violations of the First, Fifth, and Fourteenth Amendments within Counts I, II, III, and IV should be dismissed as the more-specific-provision rule designates the Fourth Amendment approach as controlling. *Defs.' Mem. of L. in Supp.* 6 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994));

---

[2] Plaintiff alleges CCSO is capable of being sued for violations of the West Virginia Torts Claim Act, as asserted within Count X for negligent conduct, however, such claim is not adequately pled, thus the Court does not address this argument. *See infra* Part III.E.

*Defs.' Reply* 4.

I.       *Fourth Amendment and Qualified Immunity*

Liability is imposed under 42 U.S.C. § 1983 when a person acting under color of state law deprives an individual of "rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. When an excessive force claim is brought pursuant to Section 1983, "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation omitted). The claim is then evaluated based on the standard governing the rights allegedly infringed. *Id.* The Supreme Court expressly indicated that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395.

Defendant argues that Plaintiff's facts taken as true do not "rise to the level of a plausible excessive force claim," arguing Plaintiff fails to allege facts demonstrating the use of "constitutionally excessive force." *Defs.' Reply* 5.

Plaintiff has clearly pled that some amount of force was used, contrary to Defendants' argument relying on *Daniels v. City of South Charleston*, No. 2:20-CV-00779, 2021 WL 3624696, at *3 (S.D. W. Va. Aug. 16, 2021), where the plaintiff failed to allege excessive force because pleadings solely consisted of conclusory statements or legal conclusions. *Defs.' Mem. of L. in Supp.* 6–7. Plaintiff identifies specific instances of physical contact including grabbing and dragging that are not conclusory in nature. *First Am. Compl.* ¶¶ 2, 32–38. Additionally, Plaintiff has clearly provided details to allow the Court to gauge reasonableness of the alleged conduct, contrary to Defendant's argument relying on *Tomashek v. Raleigh County Emergency Operating*

-6-

*Center*, No. 2:17-cv-01904, 2018 WL 502752 (S.D. W. Va. Jan. 22, 2018). *Id.* at 6. In *Tomashek*, the Court determined defendants were entitled to qualified immunity because the complaint lacked information on the correctional officer's alleged violation of the Fourteenth Amendment, asserting use of excessive force by the conclusory and insufficient assertions that the officer accepted the plaintiff into custody and that plaintiff was physically and brutally restrained. *Tomashek,* 2018 WL 502752, at *6–7 ("Nor has the plaintiff offered any facts regarding when he was restrained, how many times he was restrained, why he was restrained, how he was injured by the restraint, any effort made by the officers to temper or limit the amount of force, or whether he was resisting."). The same is not true here. Plaintiff has provided the circumstances surrounding her allegation of excessive force. However, the "objective reasonableness" of the force and the question of qualified immunity remain.

To determine objective reasonableness, the context and proportionality must be evaluated in light of the circumstances – several factors are considered, including the balance between the intrusion of the individual's rights compared to the government interest at stake; the severity of the crime; the threat posed to the safety of the officers and others; whether an individual was actively resisting arrest or attempting to evade arrest by flight; and the extent of injury imposed. *Armstrong v. Village of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (citing *Graham*, 490 U.S. at 396); *Cnty. of L.A. v. Mendez*, 581 U.S. 420, 427 (2017); *Tennessee v. Garner*, 471 U.S. 1, 8 (1985); *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019). As "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," actions should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97.

Plaintiff argues Defendant Zerkle's conduct was unreasonable when he "swiped at her

phone, struck her with his hand, grabbed her elbow, and pulled her a few feet" because no amount of force could have been reasonable, as she was not suspected of committing a crime. *Pl.'s Resp.* 8–9 (citing *Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003) ("In recent years, we have twice confronted situations in which a plaintiff, subjected to police force, had committed no crime; in each we held that the plaintiff had stated a claim for violation of his constitutional right to be free from excessive police force."); *Clem v. Corbeau*, 284 F.3d 543, 554 (4th Cir. 2002)); *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001)). Defendants state that not every "push or shove" is constitutionally unreasonable. *Defs.' Reply* 5 (citing *Pittman v. Nelms*, 87 F.3d 116, 120 (4th Cir. 1996) (The facts of the case did not address a "push or shove," however, as the Fourth Circuit determined qualified immunity applied when an officer discharged his firearm at a suspected drug dealer's car which was driving away, dragging a fellow officer whose arm became caught in the window.).

Here, considering Plaintiff's detailed allegations as facts, the threat posed by Plaintiff while filming a public arrest was minimal, Plaintiff had not committed a crime nor was she resisting, and the government did not have an overwhelming interest outweighing the intrusion of her Fourth Amendment rights. Defendants fail to argue otherwise. Additionally, even *de minimus* force as alleged, if true, may qualify. *Smith v. Murphy,* 634 Fed.App'x 914, 917 (4th Cir. 2015) (The Fourth Circuit found "no support for Defendants' contention that suffering only *de minimis* injuries bars one from asserting a Fourth Amendment excessive force claim[.]"); *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018). Thus, Plaintiff has adequately pled an excessive force claim at this stage.

Next, the Court must consider whether qualified immunity applies. Officers are immune from liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have been known." *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability[.]" *Pearson v. Callahan*, 555 U.S. 223, 230 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis deleted). Accordingly, immunity questions must be resolved at the "earliest possible stage in litigation." *Id.* at 232 (citation omitted). Immunity applies, unless the officer is on notice that their conduct is unlawful, to ensure that the risk of litigation and liability does not inhibit the discharge of duties. *Somers*, 132 F.4th at 696 (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Accordingly, the Court must consider two questions in either order: (1) has Plaintiff alleged a violation of a constitutional right, and (2) was the right clearly established at the time of the alleged misconduct? *Pearson*, 555 U.S. at 232, 236, 243. Defendant is entitled to qualified immunity if the answer to either is "no." *Id.* at 236–37; *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).

In approaching the second question of whether a constitutional right is clearly established, the Court must define the right within the specific context of the case, as the Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (citation omitted); *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022) ("[T]he Court has regularly insisted on highly particularized law in the Fourth Amendment context[.]").

The Supreme Court has clarified that "caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted); *Ashcroft*

*v. al-Kidd*, 563 U.S. 731, 741 (2011). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela,* 584 U.S. at 105 (citation omitted).

Plaintiff identifies the right at a high level, as the "right to be free from unreasonable seizures including the right to be free of seizures accompanied by excessive force." *Pl.'s Resp*. 8. At the time of the alleged conduct, "the law was clear that, as a general matter, an officer must carefully measure the force used to respond to the particulars of a case, including the wrongdoing at issue, the safety threat posed by the suspect, and any attempt to evade arrest or flee." *E.W. by and through T.W.*, 884 F.3d at 186 (citing *Graham*, 490 U.S. at 396; *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). However, Plaintiff cannot solely rely on such *Graham* factors to argue that the use of force clearly violated an established right without more. *Kisela*, 584 U.S. at 105 ("But the general rules set forth in '*Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.' . . . Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." (citation omitted)). Plaintiff fails to provide case law addressing the more specific details of the case to establish that the alleged conduct violated clearly established law. *Pl.'s Resp*. 8–9 (citing *Jones*, 325 F.3d at 534 ("[I]t was clearly established that a police officer was not entitled to use unnecessary, gratuitous, and disproportionate force against a handcuffed, secured citizen, who posed no threat to the officer or others and had neither committed, nor was suspected of committing, any crime."); *Clem*, 284 F.3d at 554 ("Well before 1998 it was clearly established that a police officer could not lawfully shoot a citizen perceived to be unarmed and non-dangerous,

neither suspected of any crime nor fleeing a crime scene.")); *Park*, 250 F.3d at 852–53 (deciding officer was not entitled to qualified immunity as it was unreasonable to pepper spray an individual posing no threat after handcuffing her and throwing her against a wall).[3] Here, the officer allegedly grabbed and dragged a noncombative individual recording police activity, while not effectuating an arrest.

Despite that Plaintiff cites distinguishable cases with varying severity of injury and amount of force used in differing contexts, the Court will not decide qualified immunity at this stage. The facts, as they are developed, may provide clarity as to factors that can aid in determining whether Defendant Zerkle's conduct was clearly established to be violative of Plaintiff's rights. Additionally, Defendants solely argued that qualified immunity applied based on plaintiff's failure to plead an excessive force claim, an argument that this court rejects. *Defs.' Reply* 5. Thus, Plaintiff has not fully responded to a qualified immunity defense as it was not clearly asserted.

Accordingly, the Court **DENIES** Defendants' Partial Motion to Dismiss Plaintiff's excessive force claims within Counts I and II.

## II.      First Amendment

Defendants argue the First Amended Complaint improperly claims excessive force arising under Defendants' alleged violation of the First Amendment, and Plaintiff fails to argue otherwise. *Defs.' Mem. of L. in Supp.* 5–6; *Defs.' Reply* 4 (citing *Armstrong*, 810 F.3d at 899). Indeed, excessive force claims are evaluated under the Fourth Amendment standard. *Graham*, 490 U.S. at 395. Additionally, Count III separately addresses Plaintiff's First Amendment claim against

---

[3] *Park v. Shiflett,* 250 F.3d 843, was decided without consideration of the test for qualified immunity later announced in *Saucier v. Katz,* 533 U.S. 194, however, the Fourth Circuit later cited *Park* with approval in *Hayes v. City of Seat Pleasant*, 469 Fed. App'x. 169, 174 (4th Cir. 2012) (unpublished).

Defendant Zerkle.[4] Therefore, the Court will dismiss any independent First Amendment claims within Counts I and II.

### III.    Fifth Amendment

The Court agrees that the First Amended Complaint improperly claims excessive force arising under Defendants' alleged violation of the Fifth Amendment, and Plaintiff concedes the same. *Defs.' Mem. of L. in Supp.* 5–6; *Pl.'s Resp.* 7; *Defs.' Reply* 4. The Court will dismiss Fifth Amendment claims within Counts I and II.

### IV.    Fourteenth Amendment

Defendants argue Plaintiff's Fourteenth Amendment excessive force claim within Count I and II should be dismissed, as the Fourth Amendment standard is controlling. *Defs.' Mem. of L. in Supp.* 5–6. Plaintiff responds, citing this Court's prior decisions, that Plaintiff only invokes the Fourteenth Amendment for its incorporation of the Fourth Amendment. *Pl.'s Resp.* 7 (citing *Van*, 2025 WL 2831182, at *2 (citing *Davis v. Milton Police Dep't*, No. 3:20-0036, 2020 WL 2341238, at *10 n.10 (S.D. W. Va. May 11, 2020))). Based on Plaintiff's argument, any independent substantive due process claim under the Fourteenth Amendment is no longer asserted. *Id.* Thus, while the Fourteenth Amendment invocation for incorporation of the Fourth Amendment need not be dismissed, any Fourteenth Amendment substantive due process claim asserted within Counts I

---

[4] Defendants in their Partial Motion to Dismiss state, "Because claims of excessive force must be analyzed under the Fourth Amendment, Plaintiff's claims in Counts I, and II, III, and IV for violations of the First, Fifth, and Fourteenth Amendments are without merit and should be dismissed." *Defs.' Mem. of L. in Supp.* 6. (footnote omitted). They also state, "To the extent that Plaintiff may argue that the First Amendment governs, such a claim would be subsumed within her First Amendment retaliation claim (Count III)." *Id.* at 5 n.3. The Court finds Defendants confuse the ruling in *Graham* if they seek dismissal of the First Amendment claim entirely based on the excessive force claim involving similar conduct. Additionally, in Defendants' Reply, Defendants characterize this section of the Motion to Dismiss as a request to narrow the claims solely within Counts I and II. Defendants' arguments throughout the pleadings reflect that confined approach, and the Courts opinion will, too.

and II will be dismissed.

### C. *Monell* Claims

Count VI pleads *Monell* claims against Defendants Zerkle, Adams, CCSO, and CCC. *First Am. Compl.* ¶ 117. Defendants move to dismiss the *Monell* claims against Defendant Zerkle and Defendant Adams because they are individual county officials and not a local government unit. *Defs.' Mem. of L. in Supp.* 8–9. Defendants also move to dismiss asserted municipal liability for failure to plead the requisite elements for a *Monell* Claim. *Defs.' Mem. of L. in Supp.* 9–12.

A state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions may be subject to liability for *Monell* claims does not render them vicariously liable for the actions of their employees. *Id.* at 691 ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Accordingly, "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (citation omitted). The Fourth Circuit Court of Appeals has clarified that,

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* at 471 (citation omitted). Plaintiff has asserted liability is established by a policy or custom of the decisions of a person with final policymaking authority and through a failure to hire, train, and

supervise. *First Am. Compl.* ¶¶ 117–120, 123, 128.

### I.      Defendant Zerkle and Defendant Adams

*Monell* claims impose liability only on "municipalities and other local government units[.]" *Monell*, 436 U.S. at 690. Plaintiff argues that the claims against Defe

ndants Zerkle and Adams are "official capacity claims" that may proceed based on the argument that sheriffs, sheriff's departments, and county commissions are all separate entities. *Pl.'s Resp.* 10. With that statement, and the argument that "Defendant fails to distinguish between individual capacity and official capacity claims," Plaintiff rightfully abandons any individual capacity claim in Count IV against Defendant Zerkle and Defendant Adams under this theory of liability. *Id.*; *First Am. Compl.* ¶¶ 14–15.

In the First Amended Complaint, Plaintiff alleges that Defendant Zerkle and Defendant Adams implement policy; however, in Plaintiff's Response, Plaintiff argues only that Defendant Adams is a "person responsible for setting Cabell County Sheriff's Office policy." *First Am. Compl.* ¶¶ 14–15, 128; *Pl.'s Resp.* 11. Plaintiff argues Defendant Zerkle's actions (directed by Defendant Adams or, alternatively, that Defendant Adams' supervisory approval of Defendant Zerkle's allegedly unconstitutional conduct) gives rise to municipal liability. *Pl.'s Resp.* 11.

As Plaintiff does not continue to pose the argument that Defendant Zerkle is a person with final policymaking authority, holding the municipality liable for his conduct on one occasion would be akin to *respondeat superior* liability which is not a permissible theory within a *Monell* claim. Accordingly, Count VI as asserted against Defendant Zerkle in his official capacity will be dismissed.

Defendants argue that the official capacity claim against Defendant Adams is duplicative of Plaintiff's *Monell* claim asserted against CCC, and thus, should be dismissed. *Defs.' Reply* 7

(citing *O. W. v. Cabell Cnty. Board of Educ.*, No. 3:24-0070, 2024 WL 3445489, at *9 (S.D. W. Va. July 17, 2024) (collecting cases)). The Court agrees. Accordingly, Count VI as asserted against Defendant Adams in his official capacity will be dismissed. The analysis of municipal liability for Defendant Adams' alleged conduct follows.

### II.    Municipal Liability

Defendants move to dismiss the *Monell* claim against CCC,[5] arguing that Plaintiff inadequately pled claims for a failure to hire, train, and supervise. *Defs.' Mem. of L. in Supp.* 9–12. The Fourth Circuit has explained "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high" to allege a *Monell* claim. *Owens v. Baltimore Att'y's Office*, 767 F.3d 379, 403 (4th Cir. 2014). However, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will." *Id.* (internal quotation marks and citation omitted). For example, "alleging a pattern of constitutional violations by Deputies is sufficient under *Monell*." *Hall v. Putnam Cnty. Comm'n*, 637 F.Supp.3d 381, 398 (S.D. W. Va. 2022).

First, Defendants argue that Plaintiff has not put forth facts addressing the hiring of the officers to support a failure to hire under *Monell*. *Defs.' Mem. of L. in Supp.* 9 (citing *Board of Cnty. Cinn'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 408 (1997)). The Court agrees, and Plaintiff fails to argue otherwise. Accordingly, to the extent Plaintiff's *Monell* claim is based on a failure to hire theory, it will be dismissed.

Second, Defendants argue Plaintiff failed to assert facts supporting a failure to train theory

---

[5] Defendants also moved to dismiss the *Monell* claim against CCSO, as CCC is the appropriate authority liable to suit, CCSO will be dismissed from the action. *See supra* Part III.A; *see also Simpkins v. Logan Cnty. Sheriff's Dep't*, No. 2:13–cv–16613, 2014 WL 4072066, at *1–2 (S.D. W. Va. Aug. 14, 2014) (collecting cases).

by failing to allege a deficiency in the training program. *Defs.' Mem. of L. in Supp.* 10–11; *Defs.'*

*Reply* 9. Plaintiff does not argue otherwise. A failure to train provides for municipal liability if

"the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the city can reasonably be said to have

been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390

(1989). The First Amended Complaint states the following:

> 117. Zerkle, Adams, CCSO, and CCC have engaged in a pattern, practice, or custom of failing to adequately train and/or supervise its employee law enforcement officers on the appropriate use of force, lawful detention, and rendering medical care, such that Zerkle, Adams, CCSO, and CCC exercised deliberate indifference to the rights of Ms. Burgh.
> . . .
> 123. Zerkle, Adams, CCSO, and CCC failed to adequately supervise Zerkle during the course of his employment with CCSO, including providing the requisite level of supervision to ensure that Zerkle, as well as other similarly situated CCSO officers, were properly trained so that citizens were seized only when there was a constitutionally permissible basis to do so and so that the rights of citizens to record law enforcement officers was not curtailed.
> . . .
> 128. Additionally and/or alternatively, upon information and belief, Adams, CCSO, and CCC, implemented customs and policies for training and supervision of CCSO deputies concerning the First Amendment and seizure of citizens, that, on their face, violate the Fourteenth Amendment. Alternatively, upon information and belief, the aforementioned defendants implemented otherwise facially valid customs and policies in a manner such that constitutional violations were likely to be and were visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Cabell County.

*First Am. Compl*. Plaintiff mentions a pattern of failure to train its employees, however, Plaintiff

asserts no factual basis to support such a conclusion. Plaintiff alleges that "[t]he lack of training

demonstrated by defendants, as set forth above, demonstrates a deliberate indifference to the rights

of Ms. Burgh, and the defendants need for training is plainly obvious by the action(s) and/or

inaction(s) that they took; to-wit; the failure of Adams to stop Zerkle from violating Ms. Burgh's

constitutional rights and the ratification of Zerkle's actions by Adams because Adams participated

in and/or acquiesced to the violation of Ms. Burgh's rights." *Id.* ¶ 121.

The Court is persuaded that Plaintiff's general recitation of legal elements is insufficient to establish liability under this theory. The Supreme Court has indicated liability is established when the municipality is the "moving force" behind the violation, evident by a deliberate or conscious choice to fail in training employees. *City of Canton*, 489 U.S. at 388–89. Plaintiff has not alleged facts to support that CCC or Defendant Adams had inadequately met an obvious need to provide more or different training. This incident on its own cannot establish that Defendant Adams or CCC was deliberately indifferent to an obvious need for training before the incident occurred. While Plaintiff does allege that Defendants "had actual or constructive knowledge that Zerkle was not properly trained on the First Amendment and use of force," *First Am. Compl.* ¶ 124, that, again, is an unsupported legal conclusion which does not establish an obvious need within the training program. Plaintiff also fails to identify particular deficiencies within the training program. *Reese v. Hannah*, No. 2:23-cv-00805, 2024 WL 3607471, at *4 (S.D. W. Va. July 31, 2024) (citation omitted). Accordingly, to the extent Plaintiff's *Monell* claim is based on a failure to train theory, it will be dismissed.

Third, Defendants argue Plaintiff failed to assert facts supporting a failure to supervise theory. *Defs.' Mem. of L. in Supp.* 11. Plaintiff's response argues that a valid claim exists on a failure to supervise theory originating from Defendant Adams' failure to stop Defendant Zerkle's alleged conduct which renders the municipality liable. *Pl.'s Resp.* 11 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986) (finding the decision of a prosecutor's office whom advised the Deputy Sheriffs on a policy decision surrounding forcible entry made a "considered decision" directly causing a violation of Fourth Amendment rights); *Starbuck v. Williamsburg James City County School Board*, 28 F.4th 529, 534 (4th Cir. 2022) ("[W]hen a final policymaker has the

authority to review the decision of a subordinate, its approval of that allegedly unconstitutional decision can also give rise to liability under Section 1983.")). Plaintiff argues Defendant Adams is the highest official responsible for setting Cabell County Sheriff's Office Policy, and Defendants do not argue otherwise. *Pl.'s Resp.* 10; *Defs.' Reply 9*. This assertion does not directly address the supervisory liability theory Defendant moves to dismiss.

> To establish a § 1983 claim for supervisory liability, Plaintiff must show:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). Liability under a failure to supervise theory requires a history of widespread abuse. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

As referenced earlier, Plaintiff only asserts Defendants had "actual or constructive knowledge" that Defendant Zerkle was inadequately trained on the First Amendment and use of force. *First Am. Compl.* ¶ 124. While the Fourth Circuit has established in *Owens*, 767 F.3d at 403, that pleadings at this stage do not require a high level of detail, Plaintiff does not indicate any factual basis supporting that the failure to supervise was widespread or previously occurred.[6]

---

[6] This Court's decisions in *Hall v. Putnam Cnty. Commission*, 637 F.Supp.3d 381, 398–401 (S. D. W. Va. 2022), and *Dillon v. Hall*, 2021 WL 5915031, at *3 (S.D. W. Va. Dec. 10, 2021)

Accordingly, to the extent Plaintiff's *Monell* claim is based on a failure to supervise theory, it will be dismissed.

### III.     Claims of Violations of the West Virginia Constitution

In Count VI, Plaintiff claims Defendants' "customs and policies violated . . . Article III, Sections 1, 6, and 10 of the West Virginia Constitution." *First Am. Compl.* ¶ 131. Defendants move to dismiss any municipal liability claim made pursuant to the West Virginia Constitution, arguing that the provisions do not provide a private cause of action and that Plaintiff cannot seek redress for violations of state law or constitution in a Section 1983 claim. *Defs.' Mem. of L. in Supp.* 12–13 (citing *Weller v. Dep't of Social Serv.*, 901 F.2d 387, 392 (4th Cir. 1990) (citing *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988) ("[T]he rule repeatedly stated by the Supreme Court and determined by us in *Surdyka* that a section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes or qualify as a common law tort."); *Stepp v. Cottrell*, 874 S.E.2d 700, 706–08 (2022) (no private right of action for excessive force claims under Section 10); *Fields v. Mellinger*, 851 S.E.2d 789, 798–99 (W. Va. 2020) ("West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6.")). This Court has previously held that "Art. III, § 1 of the West Virginia Constitution ... is a statement of basic principle and does not independently give rise to a cause of action." *Van*, 2025 WL 2831182, at *5 (cleaned up) (citations omitted). While the ruling in *Stepp* was confined to a limitation of the private right of action pursuant to Section 10 in excessive force claims, Plaintiff does not argue otherwise.

Accordingly, Count VI will be dismissed to the extent that it asserts violations of the West

---

provide comparisons of sufficiently pled *Monell* claims at this stage.

Virginia Constitution.

### D. Punitive Damages

Plaintiff requests punitive damages against CCC. *First Am. Compl.* ¶¶ 133, 153, 163. Defendants argue local government units, like CCC, are statutorily immune from punitive damages under both state and federal law. *Defs.' Mem. of L. in Supp.* 13 (citing *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 237, 271 (1981); W. Va. Code § 29-12A-7(a)). The Court agrees, and Plaintiff fails to argue otherwise. Plaintiff's requests for punitive damages against the CCC will be dismissed.

### E. Intentional and/or Negligent Infliction of Emotional Distress

Count X pleads claims of state law intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"), presumably against all Defendants. *First Am. Compl.* ¶¶ 155–160. Defendants move the Court to dismiss Count X, arguing Plaintiff failed to satisfy the requisite elements. *Defs.' Mem. of L. in Supp.* 14, 17–18. Additionally, Defendants argue CCC is immune from liability for the claim under the West Virginia Governmental Tort Claims and Insurance Reform Act ("the Act"), West Virginia Code § 29-12A. *Id.* at 14–15. Defendants are correct, and Plaintiff does not argue otherwise.

First, under West Virginia law, a defendant can be liable for NIED "after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable." Syl. Pt. 2, *Heldreth v. Marrs,* 425 S.E.2d 157, 158 (W. Va. 1992). Plaintiff never alleges a person closely related to her suffered because of Defendant Zerkle's conduct. Thus, Plaintiff failed to adequately plead the required elements and the NIED claim will be dismissed.

Next, Defendants argue Plaintiff's IIED claim fails because it is duplicative of the assault and battery claims against Defendant Zerkle and because Plaintiff does not allege that Defendant Adams engaged in conduct intending to inflict emotional distress. *Defs.' Mem. of L. in Supp.* 17.

The West Virginia Supreme Court first recognized a claim for intentional infliction of emotional distress (also known as the tort of outrage) in *Harless v. First National Bank*, 289 S.E.2d 692 (W. Va. 1982), when it said: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. Pt. 6, *Harless,* 289 S.E.2d 692. A plaintiff must establish the following four elements to prevail on a claim for intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab., Inc.*, 504 S.E.2d 419 (W. Va. 1998). The Supreme Court of Appeals of West Virginia has held that "law does not permit a double satisfaction for a single injury ... because [the plaintiff] has two legal theories[.]" Syl. Pt. 7, *Harless,* 289 S.E.2d 692. It has further held that, "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for [IIED] is duplicitous of a claim for assault and battery, where both claims arise from the same event." Syl. Pt. 4, *Criss v. Criss*, 356 S.E.2d 620, 620 (W. Va. 1987). This Court has previously dismissed IIED claims as duplicative of assault and battery claims for which a plaintiff can recover damages from emotional distress. *Searls v. W. Va. Reg'l Jail*, No. 3:15-cv-9133, 2016 WL 4698547, at *4 (S.D. W. Va. Sept. 7, 2016); *Anderson v.*

*Barkley*, Nos. 2:19-cv-00198, 00199, 2020 WL 7753290, at *3 (S.D. W. Va. Dec. 29, 2020). So too here. Plaintiff's claim for IIED against Defendant Zerkle will be dismissed, as it is duplicative of Count VII (Battery) and VIII (Assault), discussed below.

Additionally, Plaintiff alleges that Defendant Adams "witnessed the entire interaction [between Defendant Zerkle and Plaintiff] and failed to stop Chief Deputy Zerkle from violating Ms. Burgh's constitutional rights." *First Am. Compl.* ¶ 3. Plaintiff states that Defendant Adams "was a willing participant in and ratified Zerkle's impermissible actions." *Id.* ¶ 108. Defendants argue Plaintiff does not assert extreme and outrageous conduct to attach to Defendant Adams' alleged intent to inflict emotional distress. *Defs.' Mem. of L. in Supp.* 18 (citing *Sammons v. Armstrong*, No. 2:23-cv-00236, 2023 WL 7924721, at *6 (S. D. W. Va. Nov. 16, 2023) ("'It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress. *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017). It only covers conduct so outrageous in character, so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Keyes v. Keyes*, 193 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless*, 289 S.E.2d at 703–04 n.20) (cleaned up)). The Court disagrees. Plaintiff's allegation that Defendant Adams stood by while a subordinate assaulted and battered Plaintiff is sufficient. Plaintiff adequately pled the required elements of an IIED claim against Defendant Adams.[7]

---

[7] Plaintiff failed to respond to many of Defendants' arguments and seemingly erroneously included inapplicable facts within its First Amended Complaint as a result of using a complaint from a previously filed case in this Court. *See First Am. Compl.* ¶ 157. The Court rejects Defendants' request that the Court treat Plaintiff's failure to address multiple arguments within the Partial Motion to Dismiss as total concessions, as Defendant must still meet its burden pursuant to Fed. R. Civ. P. 12(b)(6). *Simpkins v. Logan Cnty. Sheriff's Dep't*, No. 2:13-cv-16613, 2014 WL 4072066, at *1 n.3 (S.D. W. Va. Aug. 14, 2014).

Defendants remaining argument is that CCC is immune from liability from IIED claims pursuant to the Act. *Defs.' Mem. of L. in Supp.* 15 (citing *State ex rel. Grant Cnty. Comm'n v. Nelson*, 856 S.E.2d 608, 619 (W. Va. 2021); *Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007); W. Va. Code §§ 29-12A-4(b)(1), (c)). Defendants are correct, and Plaintiff does not argue otherwise. Thus, the Court will dismiss Plaintiff's IIED claim against CCC. Accordingly, Count X will be dismissed against Defendant Zerkle and CCC.

### F. Battery and Assault

Count VII pleads a state law battery claim, alleging that Defendant Zerkle intentionally caused harmful or offensive touching resulting in injury by swiping Ms. Burgh's phone, striking her, and by twice grabbing her. *First Am. Compl.* ¶¶ 136–39. Count VIII pleads a state law assault claim, alleging Defendant Zerkle intentionally placed Plaintiff in "immediate apprehension of harmful and offensive contact" resulting in injury by him carrying out the alleged battery conduct and by asking, "[y]ou wanna set of handcuffs?" while removing them from his belt and shaking them at Plaintiff. *First Am. Compl.* ¶¶ 143–44.

Assault and battery are separate torts in West Virginia. *See Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D. W. Va. 2015). A defendant is liable for assault if it "(a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004) (quotation omitted). A defendant is liable for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* More succinctly: an assault is "the threat to do violence;" "the actual doing of violence" is battery. *State v.*

*Cunningham*, 236 S.E.2d 459, 593 (1977) (Miller, J., dissenting).

Defendants argue both claims fail because the alleged conduct is not "unreasonable application of force" and is, therefore, insufficient to overcome the state "law enforcement privilege of common law battery." *Defs.' Mem. of L. in Supp.* 16. Plaintiff responds that Defendants did not provide the source of the asserted privilege, to which Defendants assert is the "law enforcement privilege" derived from West Virginia common law. *Pl.'s Resp.* 11–12; *Defs.' Reply* 12 (citing *W. Va. State Police v. J.H.*, 856 S.E.2d 679, 689 n.25 (W. Va. 2021) (explaining that the conduct in excess of appropriate use of force is a battery because it is no longer privileged conduct associated with lawful enforcement action (citing *Graham*, 490 U.S. at 396))); *Pegg*, 845 F.3d at 121 (4th Cir. 2017) ("[L]awful arrests are excluded from the scope of West Virginia battery."). Defendants' argument was contingent upon the failure of Plaintiff's excessive force claim. As previously discussed, Plaintiff's pleading as to her excessive force claim is sufficient at this stage.

Finally, the Court rejects Defendants' arguments that the assault claim is inadequately pled. *Defs.' Reply* 12. Plaintiff has alleged Defendant Zerkle shook his handcuffs at her and threatened to arrest her and intended to put her in imminent apprehension which resulted from his conduct. *Pl.'s Resp.* 12. Contrary to the Defendants' arguments, the alleged conduct forming the assault claim is distinct from the alleged conduct underlying the battery claim, it did not consist of mere words, and it was not a threat of future injury considering Defendant Zerkle had allegedly previously touched her without consent. *Defs.' Reply* 13.

Accordingly, Plaintiff's assault and battery claims will not be dismissed.

-25-

## IV.    CONCLUSION

Defendants' Partial Motion to Dismiss, ECF No. 9, is **GRANTED in part** and **DENIED in part.**

The Court **DISMISSES** CCSO as a defendant; Count I and II's First and Fifth Amendment claims; Count VI against Defendants Zerkle and Adams; Count VI's claims based on failure to train, hire, and supervise and claims based on violations of the West Virginia Constitution; Count X against Defendants Zerkle and CCC; Count X's claims based on NIED; and Plaintiff's claims for punitive damages against CCC.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 30, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE